We will hear argument next in number 131596, Cross-Atlantic Capital Partner v. Facebook. And if you could begin by telling me how to pronounce your name. Certainly, Your Honor. It's T.C. T.C.? Yes, Your Honor. Well, Mr. T.C., begin as soon as you're ready. Thank you, Your Honor. Let me just have one second to get my papers in order. Good morning, Your Honor. I'm Fred T.C. And may it please the Court. The Board below committed fundamental legal error regarding motivation to combine and ignoring the teaching away of the references. Miller and Lew, and Tatum and Lew, go completely opposite directions. Miller and Tatum go left, and Lew goes right. And thus, teach away from a combination where Lew teaches that downloading executable code to the user's computer, and Miller says to avoid, Miller's word avoid, downloading executable code to the user's computer, and Tatum discourages downloading executable code to the user's computer five separate times in a seven-reference combination, seven-reference, seven-column reference. The Board violated this Court's NREGI and the Gianelli holding, requiring that the Board provide the how or why a person of ordinary skill in the art would have been motivated to combine the references. The Board further violated TSR by failing to provide an explicit analysis of why there was an apparent reason to combine the references as in the claims invention. And it really all boils down to the only analysis provided by the Board, which is on page JA-19 of the opinion. In JA-19, the entire motivation to combine is stated, it would have been obvious to one of ordinary skill in the art to have combined Miller and Lew, since both references disclose computer networks in which users collaborate, and the combination of two such known similar systems would have resulted in no more than the predictable result of a computer network in which users collaborate and receive transmissions, a known operational characteristic of computer networks. Putting aside that that is not the claim invention referenced by TSR, that rationale is entirely conclusory and would render virtually any computer-based invention obvious. Absent an explicit analysis, this Court must infer that the Board used impermissible hindsight to conclude that the invention was obvious. As I noted above, Miller and Lew do teach away from each other. Lew is a Sun Microsystems reference talking about security on a network. Well, yes, but isn't Lew being used simply because it discloses the presence, and in fact widespread presence of Java? Correct. Java is really the key to the combination of Miller and Lew, is it not? Yes, so security is just superfluous, in fact irrelevant. For the purposes of our conversation, it's not overly salient, I would agree with that. But why isn't the combination of Java and Miller enough to get you to the invention in this case? Assume for a moment that we're not talking about, we're talking about priority date, other than the 988 application priority date. Well, it doesn't get you to claim your invention, Your Honor, for two reasons. First of all, what Lew talked about and what Lew has relied upon from the Board is downloading Java to the user's computer. If the Court goes to paragraph 268 of the Miller reference, which is at page 3563. At the end of paragraph 268, it states that in various preferred embodiments, actually consistent with both disclosed embodiments, the facilities provided to group members can be provided through a web-based interface, thus avoiding the need to install software packages on a user's computer. So Lew is saying you can download JavaScript to a user's computer, and Miller is saying don't. And more importantly, Your Honor, the claimed invention, if we go to page 2775 of the claim, what the claim requires is that a community be created that includes information and at least one application object, and that the community be transmitted, including the application object. I'm getting ahead of myself, but the Board, in reviewing Miller, Roseman, Yahoo, Lew, simply said that wherever there was a transmitting of an application object, that met the claimed invention. But it has to be transmitting as part of the community that's created. That's the claim limitation that's expressly in the claim. And because both Miller and Tatum were collaborative group software systems for a closed environment, they both expressly teach that there's no need to download. So those references teach away from each other. More importantly, Your Honor, Lew, the downloading of JavaScript. There's a difference between no need to download and teaching away from downloading, where you say, I recognize that there are a couple of places where the reference to the web browser is made, and in the context of it doesn't require as much use of the Internet and so forth, but I'm hard-pressed to find an actual teaching away from the use of something like Java in Miller. Well, at paragraph 268, it says the invention allows to avoid, in their words, avoid the need. And in Tatum, in five separate places, it says that the reference does not, in five separate places, the Tatum invention does not require specialized software. It repeats it five times on the user's computer. But Miller, your reliance on Miller is on what, 268? 268, Your Honor. And in the brief, we actually cite, I'm sorry. That one paragraph is what you rely on for teaching away? Well, that one and the 263, where it talks about allows functions to be provided with a minimum of programming. That's in the brief. But 268 actually uses the word avoided. And under this court's decision in Giganti, I mean, that's clearly a discouragement that would have led someone down a different path. But more importantly, in connection with, as this court has said, in Leo Pharmaceutical, neither Miller or Lew suggested the problem solved by Harvey. See, the Harvey problem that was solved is set forth at column two, lines 42 through 49, which is a JA44, which was a 1998 judgment where there were no cell phones and my 12-year-old couldn't go to an app store. It was difficult to find and interact with the communities. This is right in the Harvey reference, the Harvey patent. And it was difficult to find the downloadable, executable components necessary to interact. And all these references, even in Yahoo, I mean, Yahoo is a 333-page book that teaches users how to deal with the problems, not solve them, but deal with the problems in the prior art that Harvey solved. The claimed invention is not just the downloading of an application object. It's the creation of a community, including information, and then the transmission of that community to the end user so that that user doesn't have to go first find JavaScript or an application object in order to engage in the community. When you say a creation of a community, I struggled in reading the briefs because there are a lot of abstractions here, and trying to make them, bring them down to earth was a problem, at least for me. But when you distinguish between transmitting an application, even an executable application, versus creating a community, are you simply saying that, for example, if I want to create a community, then under the patent, what I do is I alert the host that I want to create a community having to do with golf, and I want a chat room, a chat capacity, and I want a capacity to invite other members. And then the host sends me software that allows me to chat and also to invite. That would be conveying a community, I take it, in terms of the patent, correct? No, actually, on some claims, Judge, some claims that are at issue focus on what happens at the host, like on the Facebook side of the case. Well, let's take claim one. Correct. Just focus on claim one. Have I described the creation of a community as you're using that term, or is my description inaccurate? Your description is inaccurate in that the registered user is the one who actually, and it may not be inaccurate, but I understand your description. The registered user who creates the community and provides the information selects the application object, and then I guess he asks the host, they request that that part of the community. Correct. It is. Then you know what? Then your question is correct. All right. And that differs from transmitting the, let's say, the two executable applications of the invitation and the chat capacity. How? In the context of my having wanted to start a community to deal with golf. Well, because if you read the Yahoo reference, that's what you're talking about with the chat applications. In order to engage in that community, in order to engage in the chat, you had to first go download the reference. Well, set aside the reference for a moment. You say in your brief that there is a difference between transmitting an application, by which I think you mean executable. As part of a community. Right. Well, no. I mean, you say there's a difference between transmitting a community versus transmitting an application, and I stumbled over that because I'm hard-pressed, at least in the context of my desire to create a community to dealing with golf, about what the difference is. Here's the difference, and I think it's best described by looking at the prior art systems. You had to find the community, and then you had to find the application in order to engage in the community. Download that application, and then go engage in the community. That's described in the background section of the Harvey Patent. Under the claimed invention, as claimed on page 2775, those steps are removed. What you create, when the community is created, the application object that's to be associated with the community, at least one, and some information about that community, is then transferred to other users that you designate. And that allows the community to build and go. That's basically using that technology to help Facebook, which has gotten a billion users. In 1998, it sought to avoid the problem of having to find the application object and then download it. And that's with all these other prior art systems, and that was the mistake that the board made. They used a colloquial definition of transmit, and whenever one of these references transmitted or downloaded an application object, they said that that met the claim limitation. But it has to be downloaded as part of the transmission to the community. And because both Miller and Tatum were collaborative, server-based root software systems for closed environments, none of them would have recognized, none of them did recognize the problem that I stated that Harvey solved. And certainly because both of them said avoid downloading application objects, they failed to recognize the problem facing most users of having to find an application object in order to interact with the community. That's the claimed invention. That's the claim element that the board actually read out, that the transmitting must be done as part of the community. You're into your rebuttal time. I am. And all I will say, Judge, is that reversal on the motivation to combine and the improper combinations would result in reversal on claims 76 through 146, and on the claim construction would result in reversal on claims 1 through 32, for the reasons in our brief. Thank you, guys. Good morning, Your Honors. Ms. Keefe. Unlike Mr. Keefe's name, my name is actually Ms. Keefe, although I've been called Keefe on occasion as well. Thank you for hearing us today. I think to start out, I'd like to address the issues that Mr. Keefe was just addressing. I don't believe that either Miller or Tatum teach away from the possibility of having executables downloaded. It seems to me, at least, I prefer to hear initially about the question of what it means to transmit a community and not only an executable application. Absolutely. I think here I'm much more inclined to the direction that Judge Bryson was indicating in terms of the notion of what the community is, as well as what these executable objects are, these application objects. The way that the patent is set up is that you have to create a community, exactly like Your Honor described, the idea of having a golf community. You request that the server create the community by giving it information about the community. The information about the community is, for example, its title, the idea that it's going to be a golf community. In the patent, they talk about the William Henry Harrison community, something along those lines. Then the user is allowed to select application objects or functions that can be included within that community, something like a chat function. Similarly, there's an invitation application object, which itself can separately also be an executable or an application object, as we see in a number of the pieces of prior art. For example, in Roseman, where the invitation itself is an executable that's sent down and can be clicked on by the user, giving code that instructs the computer how to perform. To me, there is a potential overlap between sending the community and the application object. You can do them both at the same time. When you send the community, you're sending the invitation to be a part of that community. You're also sending an application object, which is the invitation, which can be executed, clicked back on, and brings you back into the community. Similarly, there are times in which the chat functionality is sent down as well. In Yahoo, for example, when a chat functionality was opted to be included in the Yahoo community, Yahoo goes on to say that you can implement that chat functionality either in HTML or in Java, and they, in fact, prefer Java and say you should do it in Java, so that it becomes an executable, which is then sent down with the community to the user who's using that. Just to focus on the Yahoo example, if they send down a Java applet or something, has that single transmission transmitted a community, including an executable application? Yes, it has, because at that point... What makes it a community, the thing that was just transmitted? At that point, for example, the definition of community that was used by the board the very first time, way back in the first appeal, the board found the very broadest reasonable interpretation of community to simply be a group of people who come together to do something, and so simply sending any portion of the ability for people to interact with each other down would have been sending the community. I'm sorry, nobody is sending a group of people. They're not sending a group of people. So what are they sending? They're sending the ability for people to interact with each other, and so you're sending the place where they come together, the ability for them to come together. The board went on, though, to say, I apologize. Well, but just to make sure I understand what you're saying, this all has to be in the context, I take it, of there having been a prior or simultaneous request to have the executable application that's being sent be sent about having to do with or relating to some subject matter, like golf. Exactly so. It isn't just that somebody sends me a chat application, which I haven't yet designated for any particular use. That's exactly so, and that's exactly where I was heading, Your Honor, was to say that, in fact, by the time you get the chat application that is associated with golf, you have received the community with that chat application, because it's not just a generic chat application that's being sent down. It's the chat for that golf community. The definition that was also used by the board, the board was very careful to say, here's what I think BRI could be. However, I will also use the definition advocated by Cross-Atlantic Capital Partners, which was that the definition of a community was information and a function. In that case, information about the community is that it's about golf, and the function is the chat that you're able to use within that community. At that point, you are transmitting the community, i.e., information about it, that it is golf, and the chat that is being used for that golf community. The board properly found that that was present in all of the references that were before it, in Tatham and in Yahoo, in Roseman and in Miller, and then they added Lou in just to make sure that there was a separate teaching for sending an executable down as a part of what one of ordinary skill in the art would understand in 1998 as being something that was endemic and very, very easy to use on the Internet, Java and Java Apples. Would you mind just pointing me to where the board identified what it understood by the community that is being transmitted? And it may be several different things, several different places. Because the word community was only argued about in the very first office action regarding community, if we turn to page JA2641, we see that the board, after first saying that it believed that there was a broader reasonable interpretation of community, the board went on to say, in addition, even assuming a community is information and at least one function that is accessed via a network, as CrossAppellant at this point was CrossAtlantic, asserts, we find no difference between such community as defined by CrossAppellant and Roseman's group of individuals participating, and they go on to say, because the conference room and the function in which the participants participate is met by that community definition. I hope that answers Your Honor's question. And then, in the decision from which this appeal is taken directly, at JA19 through 13, we have the board's rationale for the fact that JA19 and JA20, I apologize, I said 13 because it's the number of the decision. We have the board indicating very clearly that while the patent owner argued that Tatum and Yahoo failed to disclose transmitting the community, they disagreed for at least the reasons set forth by the requester in the reply at pages 28 through 31, at which point the requester, being Facebook, had pointed out that Yahoo discloses a system that delivers applications like chat specific to a topic to a user's computer. And so I think that answers your question that what the board is saying is that the community that's being delivered is information, can be information and a function, golf and chat, so chat about golf. And then, that was in the lower decision, and then the secondary decision, the one that's being directly appealed from here, they're finding that, in fact, they did find that in those references. Now, Miller, as the board saw it, at least, fell short of anticipation. That's correct. And that Java was needed. That's correct. Yahoo was needed for purposes of establishing the actual transmission of the executable application. Absolutely, Your Honor. So, in Miller, I take it, how did Miller understand the operation of the browser and the, vis-a-vis the host? So, how Miller, as the way I understand Miller, how Miller operated vis-a-vis the host computer and the user system is that the information, it gets a little complicated. The host was doing all the processing. The host was doing the processing. As opposed to the client doing the processing after conveyance of a Java. That's correct. Instead, the processing was done at the host computer, and then it was displayed at the user's computer. There was clearly interaction. So, the user's computer is basically just a slave. At that point, it was. And instead, now, the slave is, in effect, the server. That's correct. Java takes over vis-a-vis some other user. That's correct. And Java is a very natural, one of ordinary skill in the art, at the time, would easily recognize that Java was something that could essentially offload. You would be able to send an executable or an applet down to the user's computer and enable it to do some of the processing. And under the Sovereign case and Muni option, what the Federal Circuit has held is that... Where's the motivation to do that? The motivation to combine, and the motivation to combine was given by the board itself. The board itself found that the motivation to combine Miller and Lu, this is on page JA-19, was because both systems disclosed computer networks in which users wish to collaborate. And so, the combination of the two would yield something that would enable them to better collaborate. For example, in Miller, Miller specifically talks about the fact that users can come together and use applications such as a word processing type application or an Excel type application. Lu specifically talks about having Java used to send down word type applications and Excel or spreadsheet type applications. I guess my question is, why would you need to download the stuff if Miller has it all on the host computer and it all works just fine on the host computer? Because one of ordinary skill in the art at the time would understand that if you were to put Miller on the World Wide Web using the Internet, it would be logical and normal to also use applets as an alternative way of sending the information from the host down to the computer at the other end. There is nothing... Is your argument that, well maybe I'm putting words in your mouth that tell me, is your argument that Miller would work, it's just clunkier than having Miller plus Java? That's correct. Or maybe Miller might not work so well for like people who want to create golf communities who have a very slow or not powerful computer at home and can't host hundreds of people and have them do the applications on their own. That's absolutely correct. So that's why you get the applets that are downloadable so everybody's computer does the processing on their own. Your Honor, it is exactly correct. That makes sense to me, but is that anywhere in the Board's opinion? Again, I believe that it is by virtue of the fact that the Board has said that by virtue of both Miller and Lu having the same goal of allowing people to work together, having computer systems, that you would naturally combine them and you would end up with predictable results. And so these are two things that can be combined together to yield a predictable result to one of ordinary skill in the art and it would yield exactly as Your Honor has pointed out, that this would be a faster way. And the idea that it teaches away is simply not true. The fact that Miller has a paragraph that simply says, in this embodiment you've avoided the use, does not say, please always avoid. Can I ask you a question about Lu? Please. It clearly references Java, but kind of what confuses me about the Lu references, it doesn't really seem to have anything to do with anything that's going on here. It just references Java and background section, right? How is that, in a sense, prior art? Because the prior art in Lu is really all about the security stuff. The reason that we used Lu was to indicate, and not just indicate, but to be explicit about the fact that at the time, using Applet and Java to send down executables was well-known. And in fact, it was taught as something that was so fundamental and so well-known that it was in the background section. It's even in the background section of the patented issue here in the 629 patent. They talk in column one in the background about the possibility of using Java in order to send applications down to a user's computer. Absolutely. Is there any indication in the record as to when Java itself, setting aside Lu, was commercially available? The answer is not specifically in the record. That's why we used Lu, was to be able to bring that into the record, showing that the background. She could have brought something else. Possibly could have, but at least this was self-enabling because it's a patent and it does talk about it and discuss it in that same way. So Lu definitely does that. But even without Lu, the board found that Yahoo had all of the features even without combining with Lu. If we look, for example, at JA-19, the board found that Yahoo alone sends down the executable. It's in the first paragraph where the board says that, for example, as Requester points out, Yahoo discloses a system that delivers applications to your computer, citing portions of Yahoo. And as we cited throughout our brief, in numerous separate sections of the Hill book, it talks about the fact that Java is actually preferable to HTML when using something like Yahoo and Yahoo! Club because it works better. You can do it with HTML, but to use Your Honor's words, it might be a little bit clumpier. Java and Applet would be a quicker and faster way. So here the board has also given us good and solid reasons for its decision, substantial evidence to support the obviousness combination using Yahoo! or Hill alone in combination with TASEM. You don't need the... Well, but there was... I've lost track of... There were so many combinations. There were indeed. Permutations and combinations. But I didn't remember Miller and Yahoo! as being one of them. Miller and Yahoo! was not one. It was TASEM and Yahoo! and Miller and Lu. That's correct. You are correct. And I apologize if I misguided you on that. I'm a little confused, actually. Maybe I've got this wrong, but I didn't think that there was any combination of TASEM with Yahoo! alone. I thought that both Miller and TASEM required Lu. There's a combination of TASEM plus Yahoo! Sorry, Lu plus either TASEM or Yahoo! And what I'm pointing out is that on page JA-19, what the board is saying is that it didn't even have to go to the issue of Lu because Yahoo! had the absolute sending by itself. On the very next page, the board talks about what the motivation to combine TASEM and Lu would be for the TASEM, Yahoo! and Lu combination. And so the combination of TASEM and Lu was because of the fact that both TASEM and Lu disclosed systems where one would be working together and would want to do that. Let me get this straight, though, because this is not the way I understand it. You think that the board relied as a ground for rejection on TASEM and Yahoo! alone, without Lu? It's interesting because of reading it very carefully. The way that the actual statement was written was TASEM plus Yahoo! plus Lu. However, in the board's decision at JA-19, the board indicates that the element that they were trying to find in the TASEM, Yahoo! combination of transmitting the community and the executable could be found in Yahoo! alone. The board goes on to say that there's never been a challenge of combining TASEM and Yahoo! together. In fact, that's been waived. So the combination of TASEM and Yahoo! is proper. And then, if you need to combine Lu into that, there's a motivation to combine TASEM and Lu. So you end up with an A plus B already exists. B might have it by itself, but at a minimum, you can combine A and C, and here's our motivation. I think I actually might have just made that more complicated, but the reality is it's all there. TASEM plus Yahoo! plus Lu. The board found that Yahoo! had it by itself, but in all combinations, it worked together. And I see my time is up. Thank you. I appreciate your time. Thank you, Your Honors. Judge Hughes, you hit the nail on the head. The combination that was proposed by Facebook was a three-reference combination. TASEM, Yahoo! and Lu. And what the board found at JA-19 was that all Yahoo! discloses was a system that delivers applications to your computer.  an application that was a three-reference combination. And Facebook never argued that Yahoo! discloses transmitting at any part of the community. And in fact, Your Honors, if you turn to page 24... Let me get the right page. 2948. The board cited in a decision at JA-19 this page on the left, which is 267. And if you look on the left, it says technical stuff. And it talks about Java. Java is a software language that can be understood and used. Critically, if you go to the next page on the right,   that can be understood and used. This is the second full paragraph after the check marks. It says, after you have any Java problems squared away. To represent the Java transmitted community, which it doesn't, the board never found that it did, and the Java transmitted in application object is inconsistent with the specific teachings of Yahoo! And so, the fact of the matter is that as to the three-reference combinations, TASEM, Yahoo! and Lu, or TASEM, Hertz, and Lu, the board provided absolutely no rational underpinning as to the motivation. It failed to discuss the fact that TASEM teaches away. It failed to discuss the fact that neither one of those references defined the problem as indicated by Harvey. Interestingly, Your Honors, if you go to page 2641, which is part of the board's original opinion, In the original opinion, the board actually rejected Facebook's arguments back in the first appeal that the definition of transmitting could include the mere linking through an electronic connection, and that that would include the conveyance of an application object. And the reason why that's relevant is that the Roseman invitation card, that's not the transmission of an application object. That is a linking or an invitation. That was data, that was information, that was an icon. That's not an application object. For the reasons set forth at pages 49 through 55 of our moving group. Can I just ask you a question? Certainly. Why is a hypertext link not an executable application? Because all this is a link to get to, in 1998, all it was was a link that told the server, computer, and Miller, right? No, I understand kind of what it does. You click on it and it actually gives an instruction to do something. Right. I'm trying to understand. Give me some words to explain why that's not an executable. Because something that gets done, gets done on the server. That's why. When you click on an executable link... The first thing that gets done is the client directs you to the server. Why is that? It may be an unbelievably simple application that's being executed, but why is that not an executable application? For the reasons that are in our brief, that's not... An executable has to have some type of executable code included in it. As I understand it, I'm not the computer guy, but as I understand it, that link, that hyperlink, that's HTML, that's a data, that's a webpage that takes you to the thing. In fact, if you read in the Yahoo reference, if you read the Yahoo reference talking about chat, it talks about the difference of using HTML and the more richer experience that you can have if you actually download the job application. A link is clearly very simple. It's a one-note thing, but it's not just a display. It actually tells the computer to do something. I'm trying to understand this. It tells the host computer to do something. So when you use the term executable, you're really using it very much as a term of art. You're not saying it just enables you to initiate the execution of some function. It means that it itself, resident of that computer, executes that function from that computer and not from some other location. And that was the problem that was sought to be solved to make sure that every user had that executable code. And that's what Java does, right? Correct. And that's what Java does. Well, that's what Java does. Yes, correct. And so the invention of Harvey Patton was that when you transmit the community, transmit the application object that would then reside on the user's computer, contraindicated from Tatum and Miller, and actually perform the function. And if you use Java, you achieve that end. If you use Java in the community context, you achieve that end, right? Correct. And Lou does not, the board never found that Lou disclosed transmitting a community. Can you just wrap up, please? Yes, I am wrapping up. The bottom line is this, Your Honor. In order to reach the decision, the board had to ignore this court's holding in M. Ray Gianelli. It had to ignore the Supreme Court's teaching of providing an apparent reason to combine the Supreme Court's teaching that there has to be an explicit reason why things were done. And it ignored this court's law on claim construction. And we urge the panel to reverse. Thank you. Thank you.